**No. 13-2200**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

———————————

*CHESAPEAKE BAY FOUNDATION, INCORPORATED*,

Appellant,

*v*.

*LOIS ALT, d/b/a EIGHT IS ENOUGH; AMERICAN FARM BUREAU
FEDERATION; WEST VIRGINIA FARM BUREAU*,

Plaintiffs-Appellees,

*UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; CENTER FOR
FOOD SAFETY; FOOD & WATER WATCH; POTOMAC RIVERKEEPER; WEST
VIRGINIA RIVERS COALITION; WATERKEEPER ALLIANCE, INC*.,

Defendants-Appellees.

———————————

_____

**BRIEF OF APPELLEES LOIS ALT, AMERICAN FARM BUREAU
FEDERATION, AND WEST VIRGINIA FARM BUREAU**

David L. Yaussy                      James T. Banks
ROBINSON &                           Joanne Rotondi
  MCELWEE PLLC                       HOGAN LOVELLS US LLP
P.O. Box 1791                        555 13th Street, NW
Charleston, WV 25326                 Washington, DC 20004
(304) 344-5800                       (202) 637-5600
*Counsel for Appellee Lois Alt d/b/a*   *Counsel for Appellees American Farm*
*Eight Is Enough*                    *Bureau Federation and West Virginia*
                                     *Farm Bureau*

**CORPORATE DISCLOSURE STATEMENT**
**<u>OF APPELLEE LOIS ALT d/b/a EIGHT IS ENOUGH</u>**

In accordance with FRAP 26.1 and Local Rule 26.1(a), appellee Lois Alt

d/b/a Eight is Enough ("Alt"), hereby makes the following disclosure:

1.    Alt is not a publicly held corporation or other publicly held entity.

2.    Alt does not have a parent corporation.

3.    No publicly held corporation or other publicly held entity owns 10%

or more of Alt's stock.

4.    There are no other publicly held corporations or other publicly held

entities that have a direct financial interest in the outcome of this litigation.

5.    Alt is not a trade association.

6.    This case does not arise out of a bankruptcy proceeding.

## CORPORATE DISCLOSURE STATEMENT
## OF APPELLEE AMERICAN FARM BUREAU

In accordance with FRAP 26.1 and Local Rule 26.1(a), appellee American Farm Bureau Federation ("AFBF"), hereby makes the following disclosure:

1.    AFBF is not a publicly held corporation or other publicly held entity.

2.    AFBF does not have a parent corporation.

3.    No publicly held corporation or other publicly held entity owns 10% or more of AFBF's stock.

4.    There are no other publicly held corporations or other publicly held entities that have a direct financial interest in the outcome of this litigation.

5.    AFBF is a trade association.  AFBF does not have any member whose stock or equity value could be affected substantially by the proceeding or whose claims AFBF is pursuing in a representative capacity.

6.    This case does not arise out of a bankruptcy proceeding.

## CORPORATE DISCLOSURE STATEMENT
## OF APPELLEE WEST VIRGINIA FARM BUREAU

In accordance with FRAP 26.1 and Local Rule 26.1(a), appellee West Virginia Farm Bureau ("WVFB"), hereby makes the following disclosure:

1.    WVFB is not a publicly held corporation or other publicly held entity.

2.    WVFB does not have a parent corporation.

3.    No publicly held corporation or other publicly held entity owns 10% or more of WVFB's stock.

4.    There are no other publicly held corporations or other publicly held entities that have a direct financial interest in the outcome of this litigation.

5.    WVFB is a trade association.  WVFB does not have any member whose stock or equity value could be affected substantially by the proceeding or whose claims WVFB is pursuing in a representative capacity.

6.    This case does not arise out of a bankruptcy proceeding.

# **TABLE OF CONTENTS**

<u>Page(s)</u>

CORPORATE DISCLOSURE STATEMENTS ...........................................................C-1

TABLE OF CONTENTS .................................................................................................I

TABLE OF AUTHORITIES .........................................................................................II

STATEMENT OF THE ISSUES ................................................................................... 1

STATEMENT OF THE CASE ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 1

SUMMARY OF ARGUMENT ...................................................................................... 5

ARGUMENT .................................................................................................................. 6

I.    STANDARD OF REVIEW .................................................................................. 6

II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING CBF'S INTERVENTION ...................................................................... 7

    A.  CBF Was Untimely ....................................................................................... 7

        1.  The Lawsuit Had Progressed to Where the End Was In Sight ..............9

        2.  Additional Delay from CBF's Intervention Would Have Prejudiced the Parties ........................................................................10

        3.  CBF Chose Not to Intervene In a Timely Manner, Despite Being Aware of the Case ...............................................................13

    B.  CBF's Interest Was Already Adequately Represented ................................15

CONCLUSION ............................................................................................................ 19

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION .......... 20

CERTIFICATE OF SERVICE .................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

CASES

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ......................................................16

*Black v. Central Motor Lines Inc.*,
   500 F.2d 407 (4th Cir. 1974) ........................................................7

*Brink v. DaLesio*,
   667 F.2d 420 (4th Cir. 1981) ........................................................6

*Commonwealth of Virginia v. Westinghouse Elec. Corp.*,
   542 F.2d 214 (4th Cir. 1976) ......................................................16

*Gould v. Alleco, Inc.*,
   883 F.2d 281 (4th Cir. 1989)..........................................6, 7, 8, 14

*Hill v. Western Elect. Co.*,
   672 F.2d 381 (4th Cir. 1982) ......................................................13

*Houey v. Carolina First Bank*,
   890 F. Supp. 2d 611, 621-22 (W.D.N.C. 2012) ...........................15

*Houston General Ins. Co. v. Moore*,
   193 F.3d 838 (4th Cir. 1999).....................................................7, 8

*Stuart v. Huff*,
   706 F.3d 345 (4th Cir. 2013) ...............................................6, 7, 16

*Reaching Hearts Int'l, Inc. v. Prince George's Cty.*,
   Nos. RWT 05cv1688, RTW 11cv1959, 2011 WL 4459095
   (D. Md.  Sept. 23, 2011) ..............................................................16

*Scardelletti v. Debarr*,
   265 F.3d 195 (4th Cir. 2001) ..........................................8, 13, 15

ii

Page(s)

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) ...............................................................15

*United States v. South Bend Community Sch. Corp.*,
  710 F.2d 394 (7th Cir. 1983)...................................................8, 15


**STATUTES**

33 U.S.C. §§ 1251 *et seq.*..........................................................................1

**RULES**

Fed.R.Civ.P. 24(a)...........................................................................8

Fed.R.Civ.P. 24(b) ..........................................................................8


**OTHER AUTHORITIES**

Chesapeake Bay Executive Order Website, Reports and Documents,
*EPA Strategy for Protecting and Restoring the Chesapeake Bay
Watershed* (May 12, 2010), available at
http://executiveorder.chesapeakebay.net/file.axd?file=2010%2f5%2fChesapeake+EO+Strategy%20.pdf...........18

## STATEMENT OF THE ISSUES

Whether the district court abused its discretion in denying Chesapeake Bay Foundation's ("CBF's") motion for intervention as untimely?

## STATEMENT OF THE CASE

CBF appeals from the district court's order denying its motion for intervention as of right and by permission.  CBF did not file its motion seeking intervention until after summary judgment briefing had begun.  The district court denied CBF's motion for intervention because it was untimely and because allowing CBF to intervene would have prejudiced the parties and unduly delayed adjudication of the lawsuit.

## STATEMENT OF FACTS

Because CBF's motion for intervention was denied as untimely, the facts relevant to this appeal are best presented chronologically.

1.     On June 14, 2012, plaintiff, Lois Alt of Eight Is Enough, initiated the case below seeking declaratory and other relief as a result of the United States Environmental Protection Agency's ("EPA's") issuance of a Findings of Violation and Order for Compliance ("Compliance Order") under the Clean Water Act ("CWA") (at 33 U.S.C. §§ 1251 *et seq*.) on November 14, 2011.  JA[1] 20-81.   One month later, the American Farm Bureau Federation and West

---

[1] References to the record below will be by citing to the documents contained in the Joint Appendix filed in this appeal by the parties and/or the docket entry numbers of the filings with the lower tribunal as follows: "JA [page(s)]; Doc. ___."

Virginia Farm Bureau (collectively, "Farm Bureaus"), filed a motion to intervene as plaintiff-intervenors.  Doc. 7.

2.    On October 9, 2012, the district court granted the Farm Bureaus intervention.  JA 84-99; Doc. 27.  The same day, the district court issued its first scheduling order, whereby opening summary judgment briefs would have been due by January 21, 2013, with cross-motion/response briefs due in March and replies due in April, 2013.  *See* Doc. 28.

3.    On November 16, 2012, EPA filed the certified index to the administrative record.  Doc. 30.

4.    On December 6, 2012, Potomac Riverkeeper, West Virginia Rivers Coalition, Waterkeeper Alliance, Center for Food Safety, and Food & Water Watch moved to intervene as environmental defendant-intervenors.  Doc. 31.

5.    On December 14, 2012, EPA withdrew its Compliance Order.  Doc. 69-1.

6.    On January 17, 2013, plaintiffs and EPA filed a joint motion to stay summary judgment briefing to allow the parties time to discuss possible settlement.  Doc. 60.

7.    On March 12, 2013, EPA moved to dismiss the case as moot.  Doc. 68.

8.    On March 13, 2013, the Court held a status conference, heard oral argument and allocated briefing on the motion to dismiss.  JA 100-01; Doc. 73; Doc. 75.  Although the court had not yet ruled on their intervention motion, the environmental defendant-intervenors were afforded the opportunity to brief EPA's motion to dismiss.  JA 100-01; Doc. 73.

9.    On April 22, 2013, the district court denied EPA's motion to dismiss, granted the environmental defendant-intervenors permissive intervention, and established a new briefing schedule.  JA 102-26; Doc. 88.

10.    On May 10, 2013, the court granted the parties' unopposed motion to extend the briefing schedule by one month.  JA 127-28; Doc. 90.

11.    On July 1, 2013, plaintiff and the Farm Bureaus (collectively, "plaintiffs"), filed their joint motion for summary judgment and supporting memorandum.  Doc. 92.

12.    On July 2, 2013, CBF filed a motion for leave to intervene, accompanied by over 80 pages of memorandum, declarations and proposed answers.  JA 131-217; Doc. 94; Doc. 94-6 and 94-7.  Plaintiffs (JA 218-23; Doc. 101), and the environmental defendant-intervenors, (JA 224-27; Doc. 102), opposed CBF's intervention.  CBF's motion for leave to intervene did not include a request in the alternative to participate as *amicus curiae*.  JA 131-35; Doc. 94.

13.     On July 30, 2013, the district court denied CBF intervention.  JA 235-41; Doc. 104.

14.     On August 1, 2013, CBF filed a motion for leave to file an *amicus curiae* brief in support of EPA, which was accompanied by 90 pages consisting of memorandum, a proposed amicus brief, unsolicited expert testimony, and extra-record materials.  Doc. 107.  Plaintiffs and the environmental defendant-intervenors opposed CBF's proposed *amicus* motion.  Doc. 110; Doc. 113

15.     Also on August 1, 2013, EPA filed its cross-motion for summary judgment and response to plaintiffs' motion.  Doc. 106.  Later that same day, the environmental defendant-intervenors filed their summary judgment motion and response to plaintiffs' motion.  Doc. 108-1.

16.     On August 29, 2013, CBF filed a motion for leave to submit nearly 500 pages of extra-record materials that were not contained in the administrative record for this case but had been inadvertently produced by the U.S. government and relied on by CBF in preparing its motion for intervention and motion for proposed *amicus curiae* briefing.  Doc. 118.  Both EPA (Doc. 122), and plaintiffs (Doc. 123), opposed CBF's motion for leave to file extra-record materials.

17.     On September 4, 2013, plaintiffs jointly filed their combined response and reply brief.  Doc. 121.

4

18. On September 9, the district court denied CBF's motions for leave to file an *amicus curiae* brief and to submit extra-record materials. JA 242-48; Doc. 124.

19. On October 3, and 4, respectively, the environmental defendant intervenors, Doc. 136, and EPA, Doc. 137, filed their individual replies in support of their motions for summary judgment.

20. On October 23, 2013, the district court issued final judgment on the merits of the case in favor of the plaintiff. JA 252-78; Doc. 144; Doc. 145.

## SUMMARY OF ARGUMENT

The denial of CBF's motion to intervene was well within the district court's discretion. The district court denied CBF's motion to intervene, both as of right and for permissive intervention, because it was untimely and would therefore prejudice the parties and unduly delay adjudication of the case. JA 239; Doc. 104 at 5. CBF waited to file its motion for intervention until 13 months after the lawsuit was initiated and one day after the plaintiffs had filed their summary judgment motion. As it turned out, CBF's motion came less than four months before the case ended. CBF tried to assure the district court that its intervention in the middle of summary judgment briefing would not burden the parties. JA 240; Doc. 104 at 6; JA 233; Doc. 103 at 6. The district court held such assurances to be "too little, and too late." JA 240; Doc. 104 at 6.

Timeliness is an essential requirement for intervention of right, as well as permissive intervention. Accordingly, CBF's untimeliness alone is sufficient to uphold the district court's denial of CBF's motion. Independent of its tardiness, denial of CBF's intervention also is warranted because it would have prejudiced the parties and because EPA adequately represents CBF's interest in the underlying case. This Court should uphold the district court's exercise of discretion.

## **ARGUMENT**

### I. **STANDARD OF REVIEW**

This Court reviews the district court's denial of CBF's intervention for an abuse of discretion. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989) (upholding district court's denial of intervention motion filed morning of settlement hearing); *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) ("It is well settled that district court rulings on both types of intervention motions are to be reviewed for abuse of discretion.") (citations omitted).

Specifically, the timeliness requirement for both types of intervention "is determined by a court in the exercise of its discretion" and will not be disturbed on appeal "unless this discretion is abused." *Gould*, 883 F.2d at 286 (citations omitted). Indeed, this Circuit stresses "the importance of timeliness and the wide discretion afforded the district courts." *Id.* (citing *Brink v. DaLesio*, 667

F.2d 420, 428 (4th Cir. 1981)); *see also Stuart*, 706 F.3d at 350; *Houston General Ins. Co. v. Moore,* 193 F.3d 838, 839 (4th Cir. 1999); *Black v. Central Motor Lines Inc.*, 500 F.2d 407, 408 (4th Cir. 1974) ("Rule 24 is silent as to what constitutes a timely application and the question must therefore be answered in each case by the exercise of the sound discretion of the court.").

## II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING CBF'S INTERVENTION

CBF cannot demonstrate that it is entitled to intervention as of right or permissive intervention.  First, and foremost, CBF's motion for intervention was untimely and would have prejudiced the parties and unduly delayed adjudication of the lawsuit.    Additionally, CBF's interest in this case is adequately represented by EPA.  Accordingly, the district court did not err in denying CBF intervention.

### A.    CBF Was Untimely

The tardiness of CBF's motion is the strongest reason supporting its denial.  "[T]imely application" is required for both intervention as of right and

permissive intervention. *Gould*, 883 F.2d at 286; Fed.R.Civ.P. 24(a) and 24(b).[2]

When, as in this case, a request for intervention is not timely, a court is authorized, if not required, to deny it. *See Houston General*, 193 F.3d at 839 ("[T]imeliness is a cardinal consideration of whether to permit intervention.") (internal quotation marks omitted). The purpose of the timeliness requirement "is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202-03 (4th Cir. 2001) (quoting *United States v. South Bend Community Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)), *rev'd on other grounds*, 536 U.S. 1 (2002).

As described below, CBF cannot satisfy this timeliness requirement. To determine whether an application for intervention is timely, courts in this Circuit examine three factors: "[1] how far the suit has progressed, [2] the prejudice that delay might cause other parties, and [3] the reason for the tardiness in moving to intervene." *Scardelletti*, 265 F.3d at 202-03 (citing *Gould*, 883 F.2d at 286). Here,

---

[2] To intervene of right, an applicant **must** satisfy **all four** of the following requirements: (1) the application must be timely; (2) the applicant must have an interest in the subject matter sufficient to merit intervention; (3) the denial of intervention would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation. *See* Fed.R.Civ.P. 24(a). Federal Rule of Civil Procedure 24(b) regarding permissive intervention, provides that "[u]pon **timely motion**" anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. Fed.R.Civ.P. 24(b) (emphasis added).

8

an examination of all three factors weighs against CBF's intervention and in favor of upholding the district court's denial of both intervention as of right and permissive intervention.

### 1. The Lawsuit Had Progressed to Where the End Was In Sight

In denying CBF's intervention, the district court reviewed how far the case had progressed and decided it had gone too far to accommodate CBF's tardiness. JA 237, 239-40; Doc. 104 at 3, 5-6. By the time CBF filed its motion for intervention, the district court had held one conference/oral argument, seven intervenors already had sought and received permission to intervene, a motion to dismiss had been fully briefed and denied, the parties had met to discuss possible agreement, the briefing schedule had been stayed and then extended, twice, and summary judgment briefing had commenced. In its Order denying intervention, the district court specifically noted the previous delays to accommodate settlement discussions and briefing on the motion to dismiss. JA 239; Doc. 104 at 5. The court also noted that plaintiffs had filed their opening summary judgment brief and the briefing schedule had already been extended more than once. *Id*.

At the time CBF filed its motion to intervene, the case below was indeed in "sight of the terminal." Less than two months after denying CBF's intervention, the district court issued a final ruling granting plaintiffs' summary

9

judgment motion.  JA 252-77; Doc. 144.  The district court was well within its substantial discretion to deny CBF intervention and thereby prevent CBF from derailing this case in sight of its terminal.

### 2.  *Additional Delay from CBF's Intervention Would Have Prejudiced the Parties*

As a result of how far the case had progressed, the district court held that by the very nature of CBF's untimely motion, "the parties would be prejudiced if it permitted the CBF to intervene, and the same would unduly delay the adjudication of the original parties' rights."  JA 239; Doc. 104 at 5.  The district court found it significant that CBF filed its motion to intervene one day after plaintiffs filed their joint summary judgment motion, which "foreclose[d] plaintiffs' opportunity to have addressed any of the issues the CBF set forth in its filing."  *Id*.  Indeed, because CBF waited to file its motion until after summary judgment briefing had commenced, plaintiffs were deprived of the ability to anticipate, in their opening summary judgment brief, any of the issues that CBF would have raised.[3]  Instead, the timing of CBF's filing would have limited plaintiffs to only addressing CBF-specific issues in their reply brief.  Thus, plaintiffs would have had only *one* opportunity to address CBF's issues in their

---

[3] Conversely, CBF could have known of the legal and factual issues and defenses that plaintiff, Lois Alt, and plaintiff-intervenors, the Farm Bureaus, raised since the filing of their underlying complaint on June 14, 2012, and motion for intervention on July 19, 2012.

merits briefing, compared to CBF's *two* briefing opportunities had they been granted intervention, which would have put plaintiffs at a distinct disadvantage.

Likewise, the district court noted that as a result of CBF's late filing, the environmental defendant-intervenors would have been "prejudiced if – midway through the briefing schedule – they had to try to find common ground and develop a joint legal approach with an organization that has expressed its intention to present an entirely different perspective to the Court, and that did not seek to enter the case until the briefing had commenced." JA 240; Doc. 104 at 6 (citing JA 225; Doc. 102 at 3). Avoiding such prejudice to the defendant-intervenors would have meant allowing CBF a separate summary judgment motion and separate response/reply.

If CBF had been granted intervention and additional briefing, the plaintiff and plaintiff-intervenors would have been prejudiced and the court's ruling on the merits would have been delayed. Even before CBF sought to intervene, the allocation of summary judgment briefing already was uneven. While plaintiffs chose an efficient path of joint briefing, defendants did not. Briefing from EPA and the environmental defendant-intervenors (collectively, "the defendants") was more than *double* the length of plaintiffs' total briefing, not including

11

attachments.[4]   If the court had allowed intervention, CBF's additional cross motion for summary judgment and response to plaintiffs' joint brief could have presented an additional 25-40 pages of briefing, plus an untold number of attachments and proposed extra record documents, as well as an unknown number of reply briefing pages.[5]   Such an outcome would have been inequitable. Moreover, one or more of the parties likely would have moved for extension

---

[4]  Plaintiffs filed an opening brief of 27 pages in support of their joint motion for summary judgment. *See* Doc. 92.  Defendants then filed briefs totaling 79 pages supporting each of their separate motions for summary judgment and responding to plaintiffs' joint motion. *See* Doc 106 (40 pages); Doc. 108-1 (39 pages not counting over 180 pages of extra-record "expert" testimony and attachments).  In response to defendants' separate motions and in reply supporting their joint motion, plaintiffs then filed a single, 38-page brief.  *See* Doc. 121.  Defendants then filed 40 total pages in reply briefing, excluding attachments.  *See* Doc. 137 (25 pages); Doc. 136 (15 pages not counting 137-page attachment).

[5]   In reply in support of its motion to intervene, CBF proposed to minimize any burden to plaintiffs by limiting its summary judgment briefing to "no more than 25 pages."  JA 233; Doc. 103 at 6.  This assurance was belied by the size of the proposed *amicus curiae* package that CBF sought leave to file with the district court after intervention was denied.  There, CBF filed a 90-page package of materials, including a memorandum in support of its motion, a proposed *amicus curiae* brief, unsolicited expert testimony and extra-record attachments.  Doc. 107, 107-1 and 107-3.  Shortly thereafter, CBF filed, and the parties had to brief, a motion for leave to file nearly 500 pages of extra-record documents on which it had relied to draft its proposed *amicus* brief, Doc. 118, which the district court ultimately denied when it denied CBF's participation as *amicus curiae*.  JA 242-48; Doc. 124.

and/or enlargement of briefing and the court's ruling would have been delayed, further prejudicing the parties.[6]

One of the most important considerations for a motion for intervention is whether the delay would prejudice the parties. *See Scardelletti*, 265 F.3d at 203 (quoting *Hill v. Western Elect. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)). CBF's intervention likely would have resulted in substantial additional briefing and further unnecessary delay of the court's adjudication on the merits. The district court was within its discretion in holding that CBF's untimely motion would have prejudiced the parties and unduly delayed adjudication of the case.

### 3.    *CBF Chose Not to Intervene In a Timely Manner, Despite Being Aware of the Case*

All of the circumstances in this case indicate that CBF could have moved to intervene well before the day it did so. Rather, CBF filed its motion after the case had progressed considerably and was in sight of a decision. The timing of CBF's motion—after plaintiffs had filed their joint summary judgment motion— eliminated any possibility for plaintiffs to address any of the issues, context,

---

[6] At the time CBF filed its motion to intervene, CBF declined to also move for leave to participate as *amicus curiae* in the alternative to intervention. Instead, CBF waited until after the court denied intervention to separately move for leave to participate as *amicus curiae*. Briefing for both motions, as well as for CBF's subsequent third motion, for leave to file extra record documents, all took place while the parties were in the middle of summary judgment briefing.

unsolicited testimony and potential affirmative defenses[7] that CBF set forth in its filing or to anticipate arguments that CBF would have been likely to raise. While last-second intervention may be justified in some cases, *see, e.g.*, *Gould*, 883 F.2d at 286, CBF has not demonstrated that this is such a case.

Instead, CBF concedes that it was aware of the case early on but chose to wait because intervening prior to resolution of the motion to dismiss could have been a waste of "CBF's limited resources," as it might have been unnecessary if the district court determined the case was moot.  Brief of Appellant ("CBF Br.") at 14-15 (filed Nov. 6, 2013).  But CBF cannot explain why it waited a full ***70 days after*** the district court denied EPA's motion to dismiss to attempt to intervene. Especially since CBF asserts that its interests were so important so as to justify intervention as of right, it is particularly perplexing why it would so delay moving to intervene.  In addition, five other environmental defendant-intervenors moved to intervene prior to resolution on the motion to dismiss, and consequently briefed the issue as well as participated in the conference before the district court on the issue. Specifically, CBF admits that "CBF was aware of the case before [EPA's] motion to dismiss was filed," CBF Br. at 14, which was more than four months prior to CBF's motion to intervene.  Once CBF became aware of the case, it should have

---

[7] In particular, when plaintiffs filed their opening summary judgment brief, they did not have the benefit of CBF's proposed answers to their complaints, as well as the many issues that CBF raised in its motion for intervention.

sought to intervene to protect its asserted interests, particularly in questions regarding the court's jurisdiction. *See, e.g.*, *Scardelletti*, 265 F.3d at 203; *South Bend*, 710 F.2d at 396 (stating that a prospective intervenor generally must move promptly for intervention as soon as he "knows or has reason to know that his interests might be adversely affected by the outcome of the litigation").

CBF chose to risk waiting it out and hoping for dismissal over expending the resources to intervene. This gamble weighs against CBF in examining whether to allow its tardy intervention several months later. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 71, 74 (2d Cir. 1994) (affirming denial of intervention where proposed intervenor had constructive knowledge of his interest for 15 months and actual knowledge for eight months); *Houey v. Carolina First Bank*, 890 F. Supp. 2d 611, 621-22 (W.D.N.C. 2012) (denying intervention where proposed intervenor was likely aware of the lawsuit from its outset, and at the latest, two months prior to seeking intervention). The district court was within its substantial discretion when it denied CBF's untimely motion to avoid unnecessarily delaying its ruling and derailing this case.

## B.    CBF's Interest Was Already Adequately Represented

As a supplemental factor supporting denial of intervention, CBF also fails to demonstrate an interest in this case that warrants intervention as of right. Specifically, CBF cannot overcome the presumption that the U.S. government

adequately represents its interests, particularly since EPA seeks the same outcome in the underlying case.

When the government shares the same objective, there is an assumption of adequacy of representation. Ordinarily, the "burden of showing an inadequacy of representation is minimal," but when "the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *Commonwealth of Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (citations omitted); *see also Stuart*, 706 F.3d at 348-49 (quoting same). Furthermore, "[i]n the absence of a 'very compelling showing to the contrary,' it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Reaching Hearts Int'l, Inc. v. Prince George's Cty.*, Nos. RWT 05cv1688, RTW 11cv1959, 2011 WL 4459095, *4 (D. Md. Sept. 23, 2011) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *see also Stuart*, 706 F.3d at 351-54 (collecting cases where other courts of appeals have required a "very strong showing" of inadequacy to justify intervention where the government was a party and shared the same objective).

CBF sought intervention to pursue an "outcome that preserves EPA's enforcement authority under the CWA . . . ." CBF Br. at 16 (quoting JA 137).

EPA obviously sought the same outcome. Particularly in light of this shared objective, CBF cannot show that EPA might not adequately represent this interest.

CBF and EPA shared other interests as well. One of CBF's "primary organizational interests is restoration of the Chesapeake Bay." CBF Br. at 21. EPA's summary judgment brief made clear that EPA adequately represents CBF's interests and point of view. EPA's brief began by asserting that the "Administrative Compliance Order issued in this case, and, indeed, EPA's overall enforcement strategy regarding regulation of discharges from CAFOs, is part of EPA's overall initiative *to restore the Chesapeake Bay*." Doc. 106 at 3 (emphasis added) (citing EPA Region 3 Chesapeake Bay Compliance and Enforcement Strategy).[8] Likewise, the environmental-intervenors' briefs, along with their unsolicited expert testimony, provided the Court with information on water quality and poultry farms in the Chesapeake Bay watershed, similar to the information that CBF sought to provide in its proposed *amicus curiae* briefing. *See* Docs. 108 at 3; 108-2 at 9, 11, 13.

---

[8] Likewise, the environmental defendant-intervenors' briefs, along with their unsolicited expert testimony, provided the Court with information on water quality and poultry farms in the Chesapeake Bay watershed, similar to the information that CBF sought to provide in its proposed *amicus curiae* briefing. *See* Docs. 108 at 3; 108-2 at 9, 11, 13.

CBF also asserts that its interest in this case is bolstered because it is a party to the *Fowler v. EPA* settlement.[9]  *See* CBF Br. at 19-20.  In declining to grant CBF leave to participate as *amicus curiae*, the district court evaluated CBF's contention and held that, since EPA is a party to both this case and the *Fowler* settlement, "EPA will sufficiently protect that Agreement."  JA 247; Doc. 124 at 6. Specifically, the district court stated that "EPA cites to the *Chesapeake Bay Compliance and Enforcement Strategy* at great length in its Cross-Motion for Summary Judgment," and that *Strategy* encompasses many of the considerations that CBF asserts constitute its interest in the outcome of the case.  *Id*.

CBF has not overcome the presumption that EPA adequately represents its interests, particularly when the Agency shares the same objectives of protecting its enforcement authority under the CWA and restoring the Chesapeake Bay. Therefore, CBF cannot demonstrate it is entitled to intervention as of right.

---

[9]  On May 11, 2010, EPA entered into a settlement agreement in *Fowler v. EPA*, Civ. Action No. 1:09-cv-00005-CKK (D.D.C. 2009), in which plaintiffs, including CBF, sought to compel EPA to implement regulatory and non-regulatory programs to reduce nutrients and sediment pollution in the Chesapeake Bay.  The following day, EPA issued its final *Strategy for Protecting and Restoring the Chesapeake Bay Watershed*, which outlines a federal plan of action for restoring the Chesapeake Bay.  The *Fowler* settlement agreement largely tracks what EPA believes to be its obligations under the *Strategy*.  *See* Chesapeake Bay Executive Order Website, Reports and Documents, *EPA Strategy for Protecting and Restoring the Chesapeake Bay Watershed* (May 12, 2010), available at http://executiveorder.chesapeakebay.net/file.axd?file=2010%2f5%2fChesapeake+ EO+Strategy%20.pdf.   The *Fowler* settlement agreement includes terms for seeking administrative and judicial review of EPA's actions thereunder.

## CONCLUSION

For the foregoing reasons, this Court should uphold the district court's denial of CBF's intervention. The district court did not abuse its discretion in deciding that CBF's motion for intervention was untimely and would have prejudiced the parties. Moreover, CBF's intervention was unwarranted because CBF's interests are adequately represented by EPA.

Respectfully submitted,

Ellen Steen
Danielle Quist
AMERICAN FARM BUREAU
FEDERATION
600 Maryland Ave., SW
Suite 1000W
Washington, D.C. 20024
Tel: (202) 406-3616

/s/ James T. Banks
James T. Banks
james.banks@hoganlovells.com
Joanne Rotondi
joanne.rotondi@hoganlovells.com
HOGAN LOVELLS US LLP
555 13th Street, NW
Washington, DC 20004
(202) 637-5600

*Counsel for Appellees American Farm Bureau Federation and West Virginia Farm Bureau*

/s/ David L. Yaussy
David L. Yaussy
dly@ramlaw.com
ROBINSON & MCELWEE PLLC
P.O. Box 1791
Charleston, WV 25326
Tel: (304) 344-5800

*Counsel for Appellee Lois Alt d/b/a Eight Is Enough*

19

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

1.    This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 4,285 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

2.    This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated:  December 9, 2013

/s/James T. Banks
*Counsel for Appellees American*
*Farm Bureau Federation and West*
*Virginia Farm Bureau*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of December, 2013, I caused this Brief to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the following registered CM/ECF users:

Jon A. Mueller
Christine K. Tramontana
Chesakepeake Bay Foundation
6 Herndon Avenue
Annapolis, Maryland 21403
*Counsel for Appellant*

Paige M. Tomaselli
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, California 94111
*Counsel for Food Safety and Food & Water Watch*

Susan J. Kraham
Morningside Heights Legal Services, Inc.
Columbia University School of Law
435 West 116th Street
New York, New York 10027
*Counsel for Potomac Riverkeeper and*
*West Virginia Rivers Coalition*

Betsy C. Jividen
Office of the U.S. Attorney
1125 Chapline Street
Wheeling, West Virginia 26003
*Counsel for U.S. Environmental Protection Agency*

Aaron Peter Avila
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7415
Washington, D.C. 20026
*Counsel for U.S. Environmental Protection Agency*

Eve C. Gartner
Earthjustice
156 William Street, Suite 800
New York, New York 10038
*Counsel for Waterkeeper Alliance, Inc.*

     I FURTHER CERTIFY that on this 9th day of December, 2013, I caused the

required copies of the Brief to be delivered to the Clerk of the Court via overnight

mail.

 

                                /s/James T. Banks
                                *Counsel for Appellees American*
                                *Farm Bureau Federation and West*
                                *Virginia Farm Bureau*